

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5433 | **DATE** | 2/10/2004 |
| **CASE TITLE** | BRONGEL vs. BANK ONE CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [7-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | FEB 11 2004 date docketed | | 15 |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | 2/10/2004 date mailed notice | | |
| CB courtroom deputy's initials | | 04 FEB 10 PM 4:28 Date/time received in central Clerk's Office | PW mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
**FEB 1 1 2004**

MEENA BRONGEL, )
)
Plaintiff, ) No. 03 C 5433
)
v. ) Suzanne B. Conlon, Judge
)
BANK ONE CORPORATION, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Meena Brongel ("Brongel") sues Bank One Corporation ("Bank One") for age, color, national origin, race, and sex discrimination and retaliation in violation of the Age Discrimination in Employment Act, 26 U.S.C. § 12101 ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended in 1991 ("Title VII"), 42 U.S.C. § 2000 et seq., and 42 U.S.C. § 1981. Bank One moves for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## BACKGROUND

### I. Local Rule 56.1

Although *pro se* plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Brongel has failed to comply with Local Rule 56. Bank One provided Brongel with Local 56.1 notice to *pro se* litigants opposing summary judgment. Nevertheless, Brongel submitted a ten-page rambling and argumentative response that includes unsubstantiated accusations her deposition transcript was altered, purported factual statements without citation to the record, unsupported rebuttal to the declaration of a Bank

1

One employee, and unauthenticated, incomplete portions of documents and correspondence. Brongel's response does not qualify as a Rule 56.1 response or a statement of additional facts. Nor can her response be deemed a declaration or affidavit as it is not sworn under penalty of perjury. 28 U.S.C. § 1746; *Eddings v. Lefevour*, No. 98 C 7968, 2000 WL 146610, at *7 (N.D. Ill. Sept. 29, 2000). Accordingly, Bank One's Rule 56.1 facts are deemed admitted. *Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994); L.R. 56.1(b)(2)(B).

## II. Facts

The following facts are undisputed. Bank One is a multi-bank holding company that provides retail banking, finance and credit card services, as well as commercial banking, trust, and investment management services. Employees in Bank One's information technology department are typically assigned to work in teams at the direction of a team leader who then reports to a higher level manager. From December 1994 until February 2003, Brongel was a programmer in Bank One's Chicago office assigned to mainframe computing and COBOL-language projects. In December 1999, Brongel was assigned to a team managed by Jerry Glass ("Glass"). At her deposition, Brongel admitted that she and Glass had a romantic, flirting and consensual relationship, and alluded to the fact that Glass reminded her of her college boyfriend. Bank One management was unaware of the relationship.

In September 2000, Glass left Bank One in order to relocate to Las Vegas, Nevada. In December 2000, Glass returned to Chicago and was re-hired by Bank One as a team leader. Although Glass was no longer a manager, his new role included supervision of Brongel. According to Brongel, Glass sought her attentions; she rejected him. Nevertheless, Glass repeatedly made

unwanted sexual advances over the next several months, including requests for sexual relations and touching. Brongel testified that Glass slowly "got the idea" that she did not want to have a relationship with him. Def. Facts ¶ 21; Brongel Dep. at 36.

In late 2001, Bank One decided to deploy Brongel's team from their current project to another by March 2002. Brongel and her co-workers were told they could remain on their current team and be deployed, or alternatively, they could interview for other Bank One positions. On November 2, 2001, Brongel met with her manager, Ted Frejek ("Frejek"), after she unsuccessfully interviewed for transfer to another team. At this meeting, Brongel was upset, argumentative, and threatened to resign. In particular, she complained about some of her co-workers' performances, hours and pay. Frejek told Brongel to take time off in order to consider whether she wanted to resign. Brongel admitted Frejek was unaware she was purportedly harassed by Glass at the time of their meeting. Def. Facts ¶ 15; Brongel Dep. at 55.

Around the same time, Brongel met with a Bank One psychologist and told him that Glass sexually harassed her. Thereafter, Brongel met with Frejek again on November 15, 2001. Frejek asked Lenore Chester ("Chester"), a human resources consultant, to attend. At this meeting, Brongel complained – for the first time – that Glass sexually harassed her. According to Chester, Brongel recanted the allegation when she asked for additional details, admitting she and Glass previously had a consensual relationship that ended several months earlier, that there had been no sexual harassment, that there was no reason they could not work together, and that she did not want to resign. Chester indicated that false allegations were serious, and Brongel apologized. At her

deposition, Brongel testified that the meeting left her "very satisfied" and "[e]verything got smooth" and went "fine" subsequently.¹ Def. Facts ¶ 26; Brongel Dep. at 67-68.

Over a year later, on December 20, 2002, Brongel again complained about Glass to Frejek. Prior to this date, Brongel had made no complaints about Glass to Frejek, Chester, management, human resources, or employee relations. Brongel told Frejek that Glass kissed her in an elevator two days earlier returning from a work party, and that the kiss was unwanted and unsolicited. Brongel told Frejek, "I want to get his ass because I think he called security." Def. Facts ¶ 38; Brongel Dep. at 147. Frejek contacted human resources. At her deposition, Brongel claimed that her co-workers conspired against her that day. In particular, Brongel thought one employee had drugs in his wallet and Glass planned to put his wallet in her coat and call security.

After Brongel's complaint, she worked from home until an alternate workstation could be set up in another Bank One building. Glass was removed as Brongel's supervisor, and was placed under Frejek. On January 3, 2003, Chester and Amy Brossard ("Brossard") – a Bank One employee relations specialist – began investigating Brongel's complaint, interviewing Brongel, Glass, and some of their co-workers. On January 6th, Brongel filed a charge of discrimination with the EEOC. On January 10th, Brongel returned to work at an alternate workstation in another Bank One building under Frejek's supervision.

The investigation was inconclusive. Brongel told Chester that in the year prior to the kiss, Glass made numerous unwanted sexual advances. Glass told Chester that their relationship was consensual, and the kiss was a shared, passionate one. Nevertheless, Bank One warned Glass to

---

¹Brongel testified that shortly before the November 15 meeting she complained of harassment to Pete "M." – another manager at Bank One who left for other employment within a day or two of her complaint. Def. Facts ¶ 27; Brongel Dep. at 38-40; 50-52.

4

avoid personal, non-business communications with Brongel, placed his workstation on the opposite side of the floor from Brongel's, and advised Brongel that she should report directly to Frejek and call Chester if she needed any help. After December 20, 2002, Brongel made no further complaints about Glass.

On February 11, 2003, Brongel left Bank One and never returned. That same day, she filed an EEOC charge alleging retaliation and claiming that Glass called the police and had her desk searched, apparently for illegal drugs. On February 15, Brongel left two voicemail messages at Bank One informing Frejek and employee relations that she decided not to return to work. On February 18, Brossard contacted Brongel and confirmed her resignation. At this point, Brongel apparently believed her co-workers were conspiring to plant drugs in her desk. At her deposition, Brongel made numerous accusations, including, for example, that the police were called in connection with her departure from Bank One, that the police and Cook County Judge Robert Bertucci followed her in the days and weeks after she quit, and that someone broke into her car on February 18 for purposes of planting drugs. If Brongel had not resigned, she ultimately would have been terminated as part of a reduction in force that affected almost all of her team effective March 27, 2003.

Meanwhile, on March 6th, Bank One terminated Glass' employment. Glass was informed that his conduct violated its Code of Conduct, prohibiting a romantic or sexual relationship between a supervisor and a subordinate that creates an actual or potential conflict of interest.

## DISCUSSION

### I. Standard of Review

A movant is entitled to summary judgment when the record, viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Dyrek v. Garvey*, 334 F.3d 590, 597-98 (7th Cir. 2003); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court considers the record as a whole, taking the nonmovant's evidence as true and drawing all reasonable inferences in the nonmovant's favor. *Gennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). Entry of summary judgment is proper when the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dyrek*, 334 F.3d at 597-98; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265.

To survive a motion for summary judgment, Brongel must do more than merely demonstrate a factual dispute; she must offer evidence sufficient to support a verdict in her favor. *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). This standard is applied with heightened rigor in employment discrimination cases, where issues of intent and credibility dominate. *See Greer v. Bd. of Ed. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Shannon v. Sheahan*, No. 01 C 252, 2003 WL 366584 at *7 (N.D. Ill. Feb. 18, 2003). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

II. **Summary Judgment Motion**

   A. **Age, Color, National Origin and Race Discrimination Claims (ADEA, Title VII and § 1981)**

In order to bring her ADEA and Title VII claims for age, color, national origin and race discrimination in federal court, Brongel must first have filed a charge with the EEOC alleging discrimination. 29 U.S.C. § 626(d); *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 663-64 (7th Cir. 2000). To allow otherwise would thwart the investigatory and conciliatory function of the EEOC and deprive the employer of notice of the charges. *Id.* The only other claims that may be brought in federal court are those "that are 'like or reasonably related' to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003).

Brongel filed two discrimination charges with the EEOC. The first – filed on January 6, 2003 – alleged sexual harassment in violation of Title VII. The second – filed on February 11, 2003 – alleged retaliation in violation of Title VII. Neither charge indicates that Brongel was claiming age, race, color, or national origin discrimination. Brongel did not check the age, race, color, or national origin boxes on the provided forms, and limited her narrative to purported acts of sexual harassment and retaliation. Brongel's claims of sexual harassment and retaliation are not "like or reasonably related" to her claims of age, race, color, and national origin discrimination. Accordingly, Brongel's claims of age, race, color, and national origin discrimination in violation of the ADEA and Title VII are fatally defective. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520 (7th Cir. 2003) (affirmed dismissal of age discrimination claim where plaintiff did not check age box or specify relevant ages, and referenced only purported acts of national origin discrimination); *Sitar*, 344 F.3d

at 726 (affirmed dismissal of sex discrimination and sexual harassment claims in lawsuit for retaliation because plaintiff only checked retaliation box and did not reference facts related to sex discrimination or sexual harassment claims); *Auston v. Schubnell*, 116 F.3d 251, 254 (7th Cir. 1997) (affirmed dismissal of retaliation claim in lawsuit for sex and disability discrimination because plaintiff did not check box for retaliation on EEOC form or reference retaliatory conduct in his EEOC charge).

The § 1981 claims are also meritless. Brongel has proffered no evidence to support claims for race, color or national origin discrimination. The undisputed facts reveal that this case solely concerns purported sexual harassment and retaliation, not race, color, or national origin discrimination. Indeed, Brongel's particular race, color and national origin are not even apparent from the face of her complaint or the record. *Green v. Motorola, Inc.*, 96 C 7654, 1998 WL 142356 (N.D. Ill. 1998) (plaintiff must show her protected class to establish *prima facie* case for purposes of § 1981 claim).

### B. Sexual Harassment Claim

Title VII prohibits discrimination in employment with respect to compensation, terms, conditions or privileges of employment because of an employee's sex. 42 U.S.C. § 2000e-2(a)(1). This prohibition protects against hostile work environment sexual harassment. In order to establish a *prima face* case, Brongel must show: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile or offensive work environment that seriously affected her psychological well-being; and (4) a basis for employer

liability. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002). Bank One challenges the third and fourth elements.

### 1. Severe or Pervasive

Preliminarily, this court rejects Bank One's contention that Brongel may not rely on acts of alleged sexual harassment occurring prior to the 300 days before she filed her first EEOC charge. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (where an act contributing to a hostile work environment occurs during the 300-day limitations period, other acts within the scope of that hostile environment claim occurring before the limitations period may be considered for purposes of liability). Brongel filed her first EEOC charge on January 6, 2003, alleging acts of hostile work environment sexual harassment by Glass both within and before the limitations period. Because Brongel alleged at least one instance of sexual harassment by Glass within the limitations period, *i.e.*, the December 18, 2002 unwanted kiss, she may rely on Glass' acts of sexual harassment before the limitations period to establish her hostile environment claim. *Id.* at 115-21.

The undisputed facts reveal that from December 1999 until September 2000, the relationship between Brongel and Glass was romantic, flirtatious and consensual. According to Brongel, however, once Glass returned from Las Vegas in December 2000, he continued to make numerous sexual advances – including touching and requests for sex – that she repeatedly rejected as unwanted, culminating in the kiss on December 18, 2002. Bank One investigated but could not substantiate Brongel's allegations of unwanted sexual advances. During Chester's investigation, Glass stated that he and Brongel's relationship was consensual. In any event, this court need not decide whether

Glass' conduct created a severe and pervasive hostile work environment because there is no basis for employer liability.

2. **Employer Liability**

When a supervisor with immediate authority over an employee creates an actionable hostile environment, the employer is subject to vicarious liability "only if the harasser took a tangible employment action as part of his harassment." *Durkin v. City of Chicago*, 341 F.3d 606, 611 (7th Cir. 2003). However, if no tangible employment action was taken, an affirmative defense may shield the employer from liability. The defense has two necessary elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Robinson v. Sappington*, 351 F.3d 317, 331 (7th Cir. 2003) (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257 (1998)).

a. **Tangible Employment Action**

No tangible employment action was been shown. Brongel merely claims Glass took her beeper after she rejected his sexual advances; she did not explain how this was significantly detrimental. Thus conduct cannot be deemed a tangible employment action. *Cf. Banks v. Metro-North Commuter Railroad*, No. 97 Civ. 1601 NRB, 2000 WL 45435 at *7 (S.D.N.Y. 2000) (plaintiff failed to show denial of beeper was a materially adverse employment action).

The only other possible tangible employment action arises out of Brongel's failure to return to work after February 11, 2003, *i.e.*, whether Brongel was constructively discharged. "To establish a claim for constructive discharge under Title VII, a plaintiff must prove that [her] working

10

conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced into involuntary resignation." *Tutman v. WBBM-TV, Inc./CBS Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000). An objective standard is used to judge whether Brongel was constructively discharged. Moreover, "[w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because 'in the 'ordinary' case, an employee is expected to remain employed while seeking redress.'" *Id.*

On February 11, 2003, Brongel left Bank One and never returned. On February 15th, Brongel left messages for two employees on Bank One's voicemail system indicating that she had decided not to return. On February 18th, Brossard contacted Brongel to confirm her resignation. Nothing in the record supports an inference that Brongel left Bank One because her working conditions were intolerable. Indeed, the undisputed facts do not suggest any harassing conduct after Bank One altered Glass' assignment to accommodate Brongel. Bank One took reasonable steps to insulate Brongel's working environment: (1) warning Glass not to have any personal, non-business communications with her; (2) having Brongel report to Frejek instead of Glass; (3) moving Brongel to another location where her workstation was on the other side of the floor; and (4) advising Brongel to call Chester in the event she needed help. Under these circumstances, Brongel fails to establish that a reasonable person would find working conditions so intolerable so as to be forced into involuntary resignation. *Tutman*, 209 F.3d at 1050 (no constructive discharge where plaintiff refused to return to work even though the employer punished the harasser and promised to segregate the plaintiff from the harasser). Brongel's unsupported contention that her co-workers conspired to plant drugs at her desk does not change this result.

### b. Bank One's Response

Bank One has established the first requirement of the *Ellerth/Faragher* affirmative defense, namely that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Ellerth*, 524 U.S. at 765. It is undisputed that Bank One had in place a reasonable sexual harassment policy that was well disseminated. While she maintains she did not read it closely, Ms. Brongel admits that she knew about the policy and received a copy of the policy in effect in 2001-2002. On November 15, 2001, Brongel first alleged sexual harassment against Glass. However, she immediately recanted and apologized for making false allegations. It is undisputed that Brongel did not complain again until December 20, 2003. Brongel was immediately allowed to work from home, until her workstation could be relocated to another building. An investigation promptly followed. Brongel's claims of sexual harassment were unsubstantiated; Glass maintained that their relationship was consensual, a fact borne out by Brongel's first recantation in November 2001. Moreover, the fact that Glass was subsequently relocated to the same building and floor as Brongel does not mean Bank One fails to meet the first requirement of the affirmative defense. It is undisputed that Glass was removed as Brongel's supervisor and warned not to have any personal, non-business communications with her. Glass' workstation was placed on the opposite side of the floor. Given the circumstances, Bank One's actions were a reasonable response to Brongel's complaint as a matter of law.[2]

---

[2] On March 6, 2003, Glass was ultimately terminated for violating Bank One's Code of Conduct, prohibiting romantic or sexual relationships between supervisors and subordinates where there is an actual or potential conflict of interest.

### c. Failure to Report Harassment

Bank One has established the second requirement of the *Ellerth/Faragher* defense, namely that "the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765. The crux of this issue is whether a reasonable person would have found her working conditions so intolerable after Bank One's corrective actions she would be forced to resign. *Tutman*, 209 F.3d at 1050. Brongel's working conditions were obviously not intolerable. Despite having found no corroborating evidence, Bank One instituted corrective actions including: (1) having Brongel report to Frejek instead of Glass; (2) moving Brongel to another location where her workstation was on the other side of the floor; (3) warning Glass not to have any personal, non-business communications with her; and (4) advising Brongel to call Chester in the event she needed help. Brongel does not claim that Glass continued to harass her. As a result, Brongel's failure to take advantage of Bank One's corrective actions means that Bank One has satisfied the second prong of the *Ellerth/Faragher* affirmative defense. Because there is no basis for employer liability, Bank One's motion for summary judgment on Brongel's sexual harassment claim must be granted.

### C. Retaliation Claim

Brongel's only claim of retaliation is that Glass called the police and had her desk searched. Brongel has provided no evidentiary support for her allegation. It is undisputed that Bank One investigated this allegation and found no information to give credence to Brongel's belief. Accordingly, summary judgment is appropriate.

## CONCLUSION

Bank One is entitled to summary judgment on all claims as a matter of law.

February 10, 2004

ENTER:

Suzanne B. Conlon
United States District Judge